UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANITA R. RILEY, | ) | NO. EDCV 04-1439-MAN |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

Plaintiff filed a Complaint on November 17, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of disability insurance benefits ("DIB"). 42 U.S.C. § 405(g). On December 29, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on September 7, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and directing the payment of benefits or, alternatively, remanding the case for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her current application for DIB on September 30, 2002. (Administrative Record ("A.R.") 64-66.) Plaintiff claims to have been disabled since August 1, 2002, due to high blood pressure, neck and back pain, arthritis, upper shoulder pain, and depression.[1] (A.R. 13, 64.) She has past relevant work experience as a telephone operator, administrative clerk, mail clerk, nursery school attendant, day worker, customer-service clerk, and cafeteria attendant. (A.R. 13.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On October 23, 2003, Plaintiff, who was represented, appeared and testified at a hearing before Administrative Law Judge Edward Steinman ("ALJ"). (A.R. 231-56.) On April 22, 2004, the ALJ denied Plaintiff's request for DIB, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 12-21, 4-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his April 22, 2004 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 1, 2002. (A.R. 20.) The ALJ further found that Plaintiff has "severe" impairments consisting of neck pain and hypertension, but that Plaintiff does not have an impairment or combination of impairments listed in, or

---

[1]   Plaintiff amended her onset at the hearing from January 1, 1999, as set forth in her application, to August 1, 2002. (A.R. 13, 64.)

medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4.  (*Id.*)  The ALJ found that Plaintiff's depressive disorder, not otherwise specified, is "non-severe." (*Id.*)  Further, the ALJ found that Plaintiff's testimony regarding her impairments was not credible.  (*Id.*)

The ALJ found that Plaintiff has the following residual functional capacity:

> [Plaintiff can] lift and carry 10 pounds frequently and 20 pounds occasionally; [sit] for at least six hours in an eight-hour day; and [stand] and walk for at least six hours in an eight-hour day. [Plaintiff's] ability to perform the full range of light level work activity is further restricted by the following nonexertional limitation:   limited overhead reaching.[2]

(*Id.*)  Based on this residual functional capacity finding, the ALJ found that Plaintiff could perform her past relevant work as a telephone operator, administrative clerk, mail clerk, nursery school attendant, or customer-service clerk.  (A.R. 20-21.)  Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act.  (A.R. 21.)

---

[2]     "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 416.967(b), 404.1567(b).

### STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. Id. at 1041; see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

4

**DISCUSSION**

Plaintiff alleges three issues.  <u>First</u>, Plaintiff contends that the ALJ erred by not according appropriate weight to the opinion of Dr. J. Ogunwole, her treating physician, in violation of 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p.  <u>Second</u>, Plaintiff contends that the ALJ failed to comply with the procedures set forth in HALLEX 1-2-730 regarding a consultative physician's post-hearing report.   <u>Third</u>, Plaintiff contends that the ALJ improperly found that Plaintiff does not have a "severe" mental impairment.  (Joint Stip. at 5.)   The Court addresses issue three under Heading A below.  As the first two issues are related, the Court deals with them collectively under Heading B.

**A.   The ALJ's Conclusion That Plaintiff's Alleged Mental Impairment Is Not "Severe" Constitutes Error.**

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" <u>Smolen</u>, 80 F.3d at 1290 (citing Social Security Ruling 85-28 and <u>Yuckert v. Bowen</u>, 841 F.2d 303 (9th Cir. 1988)); 20 C.F.R. § 416.921 ("[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *see also* <u>Bustamante v. Massanari</u>, 262 F.3d 949, 955-56 (9th Cir. 2001)(ALJ's finding that claimant's mental impairment was not severe was not supported by substantial evidence because every mental health professional who examined claimant found significant mental problems).  The "severity" requirement is merely "a *de minimis* screening

device to dispose of groundless claims." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001)(citing <u>Smolen</u>, 80 F.3d at 1290).  "[A] claim may be denied at step two only if . . .  a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence.*"  Social Security Ruling 85-28 (emphasis added).

Plaintiff contends that the ALJ improperly found that she did not have a "severe" mental impairment.  (Joint Stip. at 20.)  In addition, Plaintiff contends that the ALJ failed to "assign the appropriate probative weight" to the assessment rendered by Dr. Andrew Rooks, a psychiatrist who examined Plaintiff at the request of the Commissioner, and did not provide clear and convincing reasons for rejecting his opinion.  (Joint Stip. at 21-22.)  Plaintiff therefore contends that the Commissioner's adverse decision should be reversed, and the case should be remanded for a new determination regarding the "severity" of her claimed mental impairment.  (Joint Stip. at 22.)

On December 15, 2003, Dr. Rooks diagnosed Plaintiff with chronic recurrent depression, not otherwise specified, and assessed Plaintiff with a Global Assessment of Functioning ("GAF") of 59.[3]  (A.R. 199.)  In describing her functional limitations, Dr. Rooks explained that Plaintiff:  1) "is able to read for up to about 10 minutes" and "is able to do her chores, enjoy hobbies, and shop, though these are somewhat limited by her physical discomfort"; 2) "is capable of functioning socially, but has pulled herself away due to her depression and pain";

_____

[3]     A GAF of 51-60 shows moderate symptoms, such as those which would affect speech, or moderate difficulty in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) ("DSM-IV").

3) has "[adequate] [c]oncentration [but] [p]ersistence and pace are impaired mainly by pain, though aggravated by her depression"; and 4) "has not had repeated episodes of emotional deterioration at work." (A.R. 199.)

In describing her limitations in work adaptability, Dr. Rooks stated:

1) [Plaintiff] . . . is able to understand, carry out, and remember simple instructions [and] could perform moderately detailed and complex tasks from a psychiatric standpoint, though not to the degree that she once could prior to her depression and pain.
2) [She] could still maintain regular attendance, and perform reasonably complex activities on a consistent basis . . [but] [t]he neck pain obviously interferes with her motivation, concentration, ability to focus, and her ability to enjoy the work experience. She would not, however, need special supervision.
3) Her psychiatric condition would aggravate but not necessarily interrupt her ability to complete a normal work week. It would blunt her week, and blunt her enthusiasm for work, however.
4) She is able to accept instructions from supervisors. She is able to interact adequately with co-workers and with the public, though not with the enthusiasm she once had prior to her depression and prior to the pain.
5) Stress tolerance is moderately decreased, due to the pain.

7

1    She could deal with reasonable changes in the work situation.

2

3  (A.R. 199-200.)

4

5    The ALJ discussed Dr. Rooks's examination and assessment at length,

6  and described the above-noted findings set forth in Dr. Rooks's December

7  15, 2003 assessment.   (A.R. 14-15.)   In discussing the impact of

8  Plaintiff's claimed mental impairment on her residual functional

9  capacity, the ALJ explained that Plaintiff's mental impairment is not

10 "severe," stating:

11

12    The undersigned notes [Plaintiff's] allegations of depression.

13    However, the undersigned agrees with Dr. Rook's December 15,

14    2003, assessment of chronic recurrent depression, not

15    otherwise specified, that is quite closely tied to her neck

16    pain (Exhibit 8F).  The undersigned find[s] that [Plaintiff's]

17    depressive disorder, not otherwise specified, results in mild

18    restriction of activities of daily living; mild difficulties

19    in maintaining social functioning; mild deficiencies of

20    concentration, persistence, or pace; and no episodes of

21    decompensation.   The "C" criteria does not apply.   The

22    undersigned, therefore, finds the medical evidence of record

23    fails to establish the existence of a severe medical

24    impairment.

25

26 (A.R. 15.)

27

28    Although the ALJ's states that he "agrees" with Dr. Rooks's

8

diagnosis of chronic recurrent depression, not otherwise specified, he further characterizes Plaintiff's depression as "quite closely tied to her neck pain," which is not a fair and accurate characterization of Dr. Rooks's assessment.   Dr. Rooks diagnosed Plaintiff with <u>both</u> chronic recurrent depression, not otherwise specified, and psychosocial stressors of "[c]hronic pain related to her neck, aggravated by depression which has caused her to withdraw and focus on her pain." (A.R. 199.)

In any event, regardless of whether Plaintiff's depression has arisen due to her neck pain or her depression aggravates her neck pain, Dr. Rooks's findings -- such as his opinion that "neck pain obviously interferes with [Plaintiff's] motivation, concentration, [and] ability to focus" and her "[s]tress tolerance is moderately decreased" -- constitute limitations on Plaintiff's mental functioning.   Furthermore, they demonstrate "more than a minimal" effect on Plaintiff's ability to function in the work place.   <u>Smolen</u>, *supra*, 80 F.3d at 1290; Social Security Ruling 85-28.   The ALJ erred in failing to discuss these limitations, much less provide clear and convincing reasons for rejecting them.   <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (clear and convincing reasons are required for rejecting the uncontradicted opinion of an examining physician).

In addition, Plaintiff's depression and anxiety has been noted throughout the record, and Plaintiff has sought treatment for her depression by taking Paxil, an anti-depressant, when she can afford it. (A.R. 164-65 -- June 27, 2003 clinic notes stating that Plaintiff is "anxious" and taking Paxil; A.R. 210 -- Dr. Maze's December 23, 2003

9

report noting Plaintiff's history of depression and treatment with Paxil; A.R. 218 -- September 18, 2003 clinic notes stating that Plaintiff "[d]oes not care about food but eats when hungry"; A.R. 158-59 -- Dr. Ogunwole's September 18, 2003 Residual Functional Capacity Questionnaire noting that Plaintiff: is "anxious," has "anxiety," has pain that "constantly" interferes with her attention and concentration needed to perform even simple work tasks, is "incapable of even "low stress" jobs, and has headaches with associated symptoms of: "inability to concentrate," "mood changes," and "mental confusion"; A.R. 239-40 -- Plaintiff's testimony that she takes Paxil "when I can afford it.")

Thus, the ALJ's finding at Step Two that Plaintiff has no "severe" mental impairment is not based on substantial evidence. *See* <u>Edlund</u>, 253 F.3d at 1158(ALJ erred by finding that claimant had no "severe" mental impairment based on his improper rejection of the uncontradicted opinion of examining psychologist who expressed doubts of the reliability of the claimant's test scores but nonetheless found that the claimant had several mental "fair" limitations functioning in the workplace). On remand of this case, the ALJ must reconsider his finding regarding Plaintiff's mental impairment at Step Two and incorporate Dr. Rooks's findings regarding Plaintiff's limitations that would impact her ability to function in the workplace into Plaintiff's residual functional capacity or, alternatively, provide clear and convincing reasons for rejecting them. <u>Lester</u>, *supra*, 81 F.3d at 830.

Accordingly, the ALJ's finding that Plaintiff's claimed mental impairment is not "severe" constitutes reversible error.

10

**B.** **The Record Needs Further Development To Establish A Proper Residual Functional Capacity Finding Which Is Based On Substantial Evidence.**

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight. *See* Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989)(quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)); 20 C.F.R. §§ 404.1527(a), 416.927(a); Social Security Ruling 96-2p. When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record. Lester, 81 F.3d at 830. The ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief, and unsupported by clinical findings. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

A conflicting opinion of an examining doctor may constitute substantial evidence and provide the requisite specific and legitimate reason for rejecting the treating physician's opinion. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Thus, an ALJ may adopt the opinion of an examining physician whose opinion is supported by substantial evidence. *See* Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1984)(ALJ properly adopted the opinion of an examining physician whose findings rested on independent clinical findings)(quoting Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984)("[T]o the extent that [the nontreating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence that [the claimant] is no longer disabled.")); *see also* 20 C.F.R. § 404.1517 ("[i]f we arrange for [a

11

consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition").

In a September 18, 2003 Residual Functional Capacity Questionnaire, Dr. Ogunwole, Plaintiff's treating physician, noted that he had treated Plaintiff for nine months and diagnosed her with chronic neck pain, secondary to degenerative changes in the cervical spine, and severe headaches associated with her cervical spine impairment and located in the "temporal to forehead" region three times per week.  (A.R. 157-58.) Dr. Ogunwole also noted that Plaintiff was "anxious" and "[i]ncapable of even 'low stress' jobs.'"  (A.R. 158-59.)   In describing Plaintiff's physical limitations, Dr. Ogunwole found that Plaintiff can:  sit "O" minutes at one time; stand "0" minutes at one time; occasionally twist; never stoop or bend; rarely crouch or squat; and never climb ladders or stairs.  (A.R. 160-61.)  Dr. Ogunwole found that Plaintiff's condition has been present for the past 11 years.  (A.R. 158-59.)

In rejecting the opinion provided by Dr. Ogunwole, the ALJ explained:

> After considering the totality of evidence, the undersigned does not give controlling weight to Dr. Ogunwole's opinion of [Plaintiff's] resulting limitations for the following reasons. First, with regard to the physical capacities evaluation (Exhibit 7F), Dr. Ogunwole does not provide objective medical evidence. In fact, Dr. Ogunwole had only treated [Plaintiff] for nine months when he completed the evaluation form on September 18, 2003. The extremely limited residual functional

12

1       capacity seems to be contradicted by his own scant progress
2       notes, as well as the opinions of examining physicians Dr.
3       Chang and Dr. Maze (Exhibits 2F and 9F). <u>Second</u>, when one
4       views the objective medical evidence of record, it becomes
5       clear that Dr. Ogunwole's opinion of [Plaintiff's] limitations
6       is a conclusion based solely upon [Plaintiff's] subjective
7       complaints, as opposed to the objective evidence. There are
8       no objective medical findings to support his opinions,
9       including his own brief progress notes. <u>Third</u>, Dr. Ogunwole's
10      opinion of resulting functional limitations is not supported
11      by the other substantial evidence of record, including the
12      records of [Plaintiff's] consulting and examining sources.
13      Since Dr. Ogunwole's opinion is not well supported by
14      medically acceptable clinical and laboratory diagnostic
15      techniques and is inconsistent with the other substantial
16      evidence of record, it is not deserving of the great weight
17      generally accorded to the opinions of a treating physician,
18      and is rejected (20 C.F.R. § 404.1527.(d)(2)).

19

20  (A.R. 18-19.)

21

22      Plaintiff contends that the ALJ improperly rejected Dr. Ogunwole's
23  opinion. (Joint Stip. at 6.) Specifically, Plaintiff argues that the
24  ALJ erred in finding that Dr. Ogunwole's opinion is inconsistent with
25  the other substantial evidence of record, and lists medical evidence as
26  "ample evidence of severe impairments that supports Dr. Ogunwole's
27  statements." (Joint Stip. at 7-10.) To the extent that the ALJ found
28  that Dr. Ogunwole's opinion is ambiguous or inconsistent with other

13

substantial evidence of record, Plaintiff maintains that the ALJ should have re-contacted Dr. Ogunwole in accordance with 20 C.F.R. § 404.1512(e). (Joint Stip. at 10.) Plaintiff further contends that it was error for the ALJ to have "granted essentially controlling weight to a consultative examiner [Dr. Maze] despite the fact that this individual had examined Plaintiff only once, had no treating relationship with her, and was not privy to the EMG dated September 29, 2003 or the MRI of the cervical spine dated November 5, 2003." (Joint Stip. at 11.) Plaintiff also contends that, by failing to provide this new medical evidence to the consultative physician, the ALJ violated HALLEX 1-2-730. (Joint Stip. at 16-17.)

In rejecting Dr. Ogunwole's September 18, 2003 assessment and in determining Plaintiff's residual functional capacity, the ALJ relied upon the reports of Dr. Lilian Chang, an internal medicine physician who examined Plaintiff at the request of the Commissioner, and Dr. Sarah Maze, a neurologist who examined Plaintiff at the request of the Commissioner.[4] (A.R. 15, 17.) In her December 5, 2002 report, Dr. Chang diagnosed Plaintiff with hypertension, neck pain, upper back pain, and shoulder pain. (A.R. 35.) She provided the following functional assessment of Plaintiff:

With the decreased range of motion of the cervical spine, and

_____

[4] Aside from the reports of Dr. Chang and Dr. Maze, there is a December 26, 2002 Residual Functional Capacity Assessment completed by Dr. James Halaand, a state agency physician, assessing Plaintiff with the ability to perform work at the "light" level, with limitations to only occasionally climbing stairs or balancing, no overhead reaching, and no exposure to extreme cold or hazards, such as machinery. (A.R. 149-53.) Dr. Halaand noted that he reviewed "examining source statement(s)." (A.R. 155.)

1   the associated decreased motor strength, this patient should
2   be capable of lifting and carrying 20 pounds occasionally and
3   10 pounds frequently.   Standing and walking can be done
4   without limitation.   The patient can sit without limitation.
5   Bending, stooping, crouching, reaching, pushing, pulling,
6   grasping, and fingering can be done without limitation.
7   [Plaintiff] is limited in using the extremities for performing
8   overhead work.

10   (A.R. 135.)   Dr. Chang stated that she based her report on the history
11   of Plaintiff's illnesses reported by Plaintiff, who she found to be a
12   "fairly reliable historian," and on her own physical examination of
13   Plaintiff.   (A.R. 133-36.)

15      In a December 23, 2003 Neurological Evaluation, Dr. Maze diagnosed
16   Plaintiff with chronic neck pain.   (A.R. 203.)   Dr. Maze found that
17   Plaintiff:   "most likely has a mild cervical radiculopathy.   There is
18   reduced motion of the cervical spine.   She has undergone physical
19   therapy with minimal reduction in symptoms.   In spite of her complaints
20   of chronic pain there are actually minimal objective findings on
21   examination at this time."   (A.R. 203.)   Dr. Maze explained that "[t]he
22   report is based on formal physical examination, formal testing and
23   careful observation of [Plaintiff's] spontaneous actions during the
24   contact period," and she noted a review of medical records consisting of
25   a "report dated September 18, 2003 [making] diagnostic impression of
26   constant neck pain due to radiculopathy."   (A.R. 202-04.)   In addition
27   to her written report, Dr. Maze completed a Medical Source Statement in
28   which she found that Plaintiff can perform work at the "medium" level

and has no other non-exertional limitations aside from the limitation that Plaintiff can climb only "occasionally."[5]  (A.R. 207-10.)

Although Plaintiff's counsel requested that evidence of additional objective testing be given to Dr. Maze (*i.e.*, a September 29, 2003 EMG and a November 5, 2003 MRI) for her consideration following the hearing, the ALJ specifically rejected that request in his decision, explaining:

> The undersigned has also considered [Plaintiff's counsel's] March 23, 2004 letter at Exhibit 11E seeking additional information from the consultative examiner, Dr. Sarah Maze. The undersigned finds that the opinion of the examiner was based on the information provided to her by [Plaintiff] and from the examination of [Plaintiff] (Exhibit 9f).  The undersigned gave Dr. Maze's opinion the weight it deserved based on the record as a whole, including the new material that [Plaintiff's counsel] submitted after the neurological examination had been completed (Exhibits 10F-12F).  The undersigned finds that the record is sufficient to issue a decision and further delay to get more information from the consultative examiner based on [Plaintiff's counsel's] new submission is unnecessary and unwarranted.

(A.R. 19.)

---

[5]    "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 416.967(c); 404.1567(c).

Plaintiff's argument that the reports of Dr. Maze do not rest upon substantial evidence is meritorious.[6]  As noted above, aside from Dr. Maze's statement that she reviewed a September 18, 2003 "report," there is no indication that Dr. Maze reviewed any objective testing or treating records.[7]  Similarly, there is no indication that Dr. Chang reviewed any treating records or objective testing in rendering her opinion.  Nevertheless, the record contains significant objective testing of Plaintiff's cervical impairments, which neither Dr. Chang or Dr. Maze stated that they reviewed in reaching their determinations.[8]

Because the examining physicians upon whose opinions the ALJ relied

---

[6]  However, the Court declines the find that the ALJ committed error by failing to follow HALLEX 1-2-70.  Moore v. Apfel, 216 F.3d 864, 868 (9th Cir. 2000)("HALLEX is a purely internal manual and as such has no legal force and is not binding").

[7]  Plaintiff properly contends that Dr. Maze's conclusions are suspect, based on the September 29, 2003 EMG showing "[n]o evidence of radiculopathy," which conflicts with Dr. Maze's statement that Plaintiff "likely has a mild cervical radiculopathy."  Indeed, Dr. Maze explained that she grounded her opinion (viz., that Plaintiff can perform work at the "medium" level with only one additional non-exertional limitation of only climbing occasionally) on the "minimal objective findings" of Plaintiff's impairments.  Thus, evidence of further objective testing related to Plaintiff's impairments could impact Dr. Maze's conclusions.

[8]  See A.R. 221 (November 5, 2003 MRI of the cervical spine shows the following positive findings:  1) "diffuse spondylosis is noted with degenerative disc changes"; 2) "there appears to be narrowing of the central neural canal at approximately the level of C5-C6 with no definite evidence for cord compression or cord edema"; and 3) "there appears to be moderate to severe bilateral neural foraminal stenosis noted at the level of C4-C5 and C5-C6 with the right side effected greater than the left side mostly due to a combination of uncovertebral osteophytosis, mild diffuse disc bulge and generative facet joint changes"); A.R. 183 (January 6, 2003 x-ray of the cervical spine shows: "degenerative changes of the cervical spine, especially at C5-6"' and "calcification is seen below the right mandible and we would question stone in a salivary duct"); A.R. 223-24 (September 29, 2003 EMG shows "[n]o evidence of cervical radiculopathy was found of the left side. Clinical correlation is recommended").

17

1  in determining Plaintiff's residual functional capacity reviewed neither
2  Plaintiff's treating records nor relevant objective testing, their
3  conflicting opinions as to Plaintiff's limitations fail to constitute
4  specific and legitimate reasons for rejecting Dr. Ogunwole's September
5  18, 2003 opinion and do not clearly support the residual functional
6  capacity assessment of the ALJ. *Cf.* Miller, supra, 770 F.2d at 848; *see*
7  *also* 20 C.F.R. § 404.1517 (consultative examiners must be provided
8  necessary background information about a claimant's condition.)

9

10     However, because Dr. Ogunwole's opinions are flawed, Plaintiff's
11  residual functional capacity cannot be based on his assessment.   In
12  fact, to the extent that the ALJ concluded that Dr. Ogunwole's extreme
13  limitations on Plaintiff's ability to function are not supported by his
14  own progress notes, this basis for rejecting Dr. Ogunwole's opinion
15  appears to be well-founded.   As the ALJ recognized, Dr. Ogunwole
16  effectively found that Plaintiff is completely unable to stand or sit
17  for any length of time.   While Dr. Ogunwole's progress notes confirm
18  that Plaintiff consistently has complained of neck and cervical pain,
19  they do not note any such complete inability to sit or stand, nor do
20  they contain any recommendation that Plaintiff avoid all sitting and
21  standing.[9]   In addition, the medical records Plaintiff contends supports
22  Dr. Ogunwole's September 18, 2003 findings (Joint Stip. at 7-10) do not

23  _____

24     [9]   *See, e.g.*, A.R. 164 (June 27, 2003 record noting "neck and
    back pain [for] 11 years," pain radiating into the left and right arms,
25  and "exercise tolerance is good"); 167 (June 20, 2003 record noting
    "sensation: decreased" and "reflexes: intact bilateral"); 169 (June 2,
26  2003 record noting that Plaintiff "[complains of] neck pain which has
    some response to Naprosyn" and "denies swelling [and] pain in
27  extremity"); 179 (January 6, 2003 record noting "[left] arm aches, neck
    and shoulder pains, intermittent [for] 13-[14] [months and is] getting
28  worse").

18

suggest that Plaintiff is unable to sit or stand, nor do any such records recommend that Plaintiff completely avoid such activities. *See* Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003)(concluding that ALJ's rejection of the opinion of claimant's treating doctor was proper, and explaining that: "Nowhere do [the treating doctor's] notes indicate reasons why [claimant] would be limited to standing for only ten minutes or lifting only ten pounds, nor do they indicate that [the claimant's treating doctor] ever recommended such limitations to [claimant]."). Thus, Dr. Ogunwole's assessment does not constitute substantial evidence of Plaintiff's physical residual functional capacity.

Because Plaintiff's residual functional capacity is not adequately supported by either the opinions of Dr. Ogunwole or any examining or consultative physician, remand is necessary so that the ALJ can develop the record by seeking an additional medical opinion -- based on all the relevant evidence -- from an examining or consultative physician regarding Plaintiff's residual functional capacity. *See, e.g.,* 20 C.F.R. §§ 404.1517, 404.1545(a), 404.1512(b)(6)(ALJ may rely upon medical consultants and medical expert based on their review of the evidence in determining whether a claimant is disabled); *see also* 20 C.F.R. § 404.1519a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity, or insufficiency in the evidence). After further developing the record, the ALJ should reconsider Dr. Ogunwole's September 18, 2003 assessment and set forth specific and legitimate reasons supported by substantial evidence in the record as to all the limitations found by Dr. Ogunwole

1  that the ALJ wishes to reject.[10]

2

3  **C.   Remand Is Required.**

4

5      Here, remand is appropriate to allow the ALJ the opportunity to

6  correct the above errors.  *See* McAllister v. Sullivan, 888 F.2d 599, 603

7  (9th Cir. 1989)(remand appropriate to remedy defects in the record).

8

9                          **CONCLUSION**

10

11     Accordingly, for the reasons stated above, the denial of benefits

12  is REVERSED, and this case is REMANDED for further proceedings

13  consistent with this Memorandum Opinion and Order.  Judgment shall be

14  entered reversing the decision of the Commissioner, and remanding the

15  matter for further administrative action consistent with this Memorandum

16  Opinion and Order.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24

25      [10]   Unless the physician opining as to Plaintiff's limitations on
26  remand finds that Dr. Ogunwole's records require further explanation or
    clarification, the ALJ need not re-contact Dr. Ogunwole.  *See* 20 C.F.R.
    § 404.1512(e)(requires a treating physician to be re-contacted only in
27  instances when the information from the treating physician regarding a
    claimant's condition is inadequate in order to render a decision
28  regarding disability).

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 30, 2006

_____
                    /s/
              MARGARET A. NAGLE
       UNITED STATES MAGISTRATE JUDGE

21